UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
COMMODITIES & MINERALS                        **19 Civ. 11654 (ALC)**
ENTERPRISE, LTD.,

                    Petitioner,

       -against-

CVG FERROMINERA ORINOCO,
C.A.,

                    Respondent.
-------------------------------X

## <u>RESPONSE TO ORDER TO SHOW CAUSE</u>

Edward A. Keane
Daniel E. Vielleville
Garth S. Wolfson

    Of Counsel

**MAHONEY & KEANE, LLP**
**Attorneys for Respondent**
**61 Broadway, Suite 905**
**New York, New York 10006**
**(212) 385-1422**
*-and-*

**ASSOULINE & BERLOWE**
**100 SE 2nd St., #3105**
**Miami, Florida 33131**
**(905) 567-5576**

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT........................................3

ARGUMENT....................................................3

POINT I.        WHILE FMO WAS UNABLE TO INTERPOSE PAPERS
                EARLIER, FMO DOES WISH TO OPPOSE THE PETITION
                AND, WITH THE COURT'S PERMISSION, IS NOW
                READY TO DO SO..............................3

POINT II.       THE MOTION TO CONFIRM SHOULD BE DENIED ON
                AMPLE GROUNDS WHICH FMO SHOULD BE PERMITTED
                TO FULLY SUBMIT FOR THE COURT'S
                CONSIDERATION...............................8

POINT III.      IN ANY EVENT, THE COURT SHOULD STAY
                ENFORCEMENT OF THE JUDGMENT IN LIGHT OF THE
                VENEZUELA SANCTIONS........................16

CONCLUSION.................................................20

## PRELIMINARY STATEMENT

By Order dated August 14, 2020, Respondent, CVG
FERROMINERA ORINOCO, C.A. ("FMO"), was directed to show cause
why the Motion to Confirm Arbitration Award brought by
Petitioner, COMMODITIES & MINERAL ENTERPRISE, LTD. ("CME"),
should not be treated as unopposed. See, Docket Entry No. 14.
By way of response, and as discussed more fully below, FMO
respectfully asks that the Motion be deemed opposed, and that
FMO be afforded the opportunity to interpose answering papers
within 30 days of the Court's ruling on the instant order to
show cause.

## ARGUMENT

**POINT I.       WHILE FMO WAS UNABLE TO INTERPOSE PAPERS
EARLIER, FMO DOES WISH TO OPPOSE THE PETITION
AND, WITH THE COURT'S PERMISSION, IS NOW
READY TO DO SO.**

First, FMO respectfully refers the Court to the
Declaration of FMO's President, Abel Jimenez, true copies of
which are herewith attached in both Spanish and English as
Exhibit A, and we will follow with the translator's
certification upon receipt. As shown, FMO's ability to timely
enter an appearance has for some time been caught up in the
ramifications of the recently increased and enlarged United
States sanctions regime imposed against Venezuela. Id.
Gaining access to a means of obtaining and transferring

3

United States currency to local counsel for the purpose of defending the Motion has proven particularly intractable. Id.

These impediments were then greatly exacerbated by the COVID-19 pandemic, which caused further delays, particularly in FMO's region of Venezuela, with mass absences from the several different offices that would normally need to coordinate in arranging a response to CME's legal action. Id. We note that, even in this country, "the impact of the COVID-19 pandemic on business operations is unprecedented and excuses delays in normal litigation procedures." Modern Font Applicaions v. Alaska Airlines, 19 Civ. 00561, 2020 WL 3065157 (D. Utah, Jun. 9, 2020); see also, Hall-Johnson v. Golden Gate Regional Center Inc., No. 19 Civ. 04177, 2020 WL 2474386 (N. D. Cal. May 13, 2020) ("[T]he instant motion was briefed during the COVID-19 public health crisis. Under the circumstances, the Court will consider plaintiff's untimely-filed opposition.").

That FMO has, if only now, managed to extract itself from the web caused by these factors and be heard in response to the Court's Order to Show Cause should hopefully further confirm that FMO has never intended to flout the process or directives of this Court or willingly cede the issues raised by CME. Notice of Appearance has now been filed by the undersigned counsel. Moreover, surely no prejudice by virtue

of the delay has been visited upon or alleged by CME, which was obviously in no hurry to see this December 20, 2018 Award confirmed, having waited to file the Petition until December 19, 2020, within one day of the one-year limitation on actions to confirm arbitration awards. And, again, FMO now stands ready to gather its supports and make the full nature of its position clear. Given that no default has yet been entered, and given the courts' oft-noted strong public policy preference for deciding disputes on the merits, FMO would thus ask that the Motion to Confirm be deemed opposed.

Second, and the above notwithstanding, FMO disputes that service of process was ever properly accomplished in this case. CME's service of the Petition, as well as the Motion and Orders CME were directed by the Court to serve, were all said to have been accomplished by recourse to Section 35 of the Rules of the Society of Maritime Arbitrators ("SMA"), which allows service by mail upon the parties or their counsel in the arbitration. See, Docket Entry Nos. 9, 12, 15, 16. However, as discussed below, FMO has from the outset contested that this matter was subject to the Arbitration Agreement purporting to incorporate those SMA Rules, and that the issue of arbitrability remains for the Court to decide. See supra POINT II. It is, of course, fallacious to suggest that service, with regard to a dispute over the application

5

of an arbitration clause and its asserted agreement to service by mail, may be legitimately performed by way of that very service by mail. CME's position "puts the cart before the horse." The Court must first determine that the issues raised are subject to the arbitration agreement, before that arbitration clause can reasonably be said to provide the basis for placing FMO under the Court's personal jurisdiction in the first instance. CME thus asks the Court to lend its imprimatur to what is, essentially, just casuistry.

In addition, assuming _arguendo_ the Court were to find the claims between the parties to be governed by the SMA arbitration clause, this Court has already ruled in the prior related action that FMO is "a Venezuelan government-controlled entity . . . an agency or instrumentality of the Venezuelan government under the [Federal Sovereign Immunities Act] FSIA." _See_, _Commodities & Mineral Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A._, 16 Civ. 00861 (ALC), Docket Entry No. 122, at 1-2. As such, 28 U.S.C. § 1608(b) "provides the exclusive means by which service of process may be effected." _See, generally_, _Seramur v. Saudi Arabian Airlines_, 934 F. Supp. 48 (E.D.N.Y. 1996); _see also_, 28 U.S.C. 1608; Fed. R. Civ. P. 4.

Section 1608 and Rule 4 plainly require service of a summons, along with any complaint or petition. 28 U.S.C. 1608; Fed. R. Civ. P. 4. The Docket reflects that no summons was ever requested or issued in this case, nor has CME, which bears the burden of proving proper service of process, averred that any summons was ever served along with the Petition sub judice. This, it must be said, is a rather obvious and fundamental fail on the part of CME which should leave the Court little choice but to find that process over FMO was never made and thus necessarily excuse any delay in opposing the petition and its motion to confirm.

Moreover, Venezuela is not a party to the service-by-mail provisions of the Hague Convention. See, https://www.hcch.net/en/instruments/conventions/status-table ("The Republic of Venezuela does not agree to the transmission of documents through postal channels."). And FMO does not believe the parties entered into any special arrangement for service by mail sufficient to comply with Section 1608.

But what is, perhaps, most remarkable, is that this is the second time CME has made these mistakes. In the other prior related action, the District Court in Miami already ruled 1) that the failure to serve a summons was fatal to

7

the exercise of personal jurisdiction over FMO and 2) that the agreement between CME and FMO contained no special arrangement for service by mail sufficient to otherwise comply with Section 1608. <u>Commodities & Minerals Enterprise Ltd. v. CVG Ferrominera Orinoco, C.A.</u>, No. 17 Civ. 20196 (S.D. Fla. Apr. 4, 2017) A true copy of that decision is herewith attached as Exhibit B. This is "deja vu all over again," and, if not <u>res judicata</u>, at the very least, an undeniably reasonable basis to allow FMO to now voluntarily appear and defend the case, albeit a bit later than CME may have wished.

**POINT II.      THE MOTION TO CONFIRM SHOULD BE DENIED ON ON AMPLE GROUNDS WHICH FMO SHOULD BE PERMITTED TO FULLY SUBMIT FOR THE COURT'S CONSIDERATION.**

FMO has several meritorious defenses against the confirmation and enforcement M/V General Piar Final Award.

This proceeding is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 ("the New York Convention"). The New York Convention is applicable to the courts of the United States pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 201 <u>et seq</u>.

The New York Convention applies to "arbitral awards not considered as domestic awards in the State where their

recognition and enforcement are sought." N.Y. Convention, art. I(1). "Under Second Circuit precedent, a nondomestic arbitral award is an award that is "made" in the United States because the parties agreed to arbitrate before an arbitrator in the United States, but which nonetheless falls under the New York Convention and Chapter 2 of the FAA for one of two reasons: (1) it was "made within the legal framework of another country, e.g., pronounced in accordance with foreign law[,]" or (2) it was decided under the laws of the United States but involves either entities that are not U.S. citizens or, even if only U.S. citizens are involved, also involves "property located abroad, [or] envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58 (2nd Cir. 2017) (citing Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932 (2d Cir. 1983))

Article V of the New York Convention specifies the grounds under which a court may refuse confirmation of an arbitral award. Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85 (2d Cir. 2005). Here, as set forth below, there are at least three reasons for denying confirmation.

First, Article V(1) of the New York Convention allows this Court to deny recognition where a tribunal acted without jurisdiction. Arbitration "is strictly a matter of consent." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010); Rent-A-Center West, Inc. v. Jackson, 561 U. S. 63, 67 (2010). The Supreme Court has thus repeatedly made clear that whether a particular issue falls within the scope of an agreement to arbitrate is a question of arbitrability. BG Group PLC v. Republic of Arg., 134 S. Ct. 1198, 1206 (2014). Courts decide such issues. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, 561 U. S. at 68-69. An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. at 70. The Supreme Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable"

evidence. <u>First Options</u>, 514 U. S., at 944; <u>Rent-A-Center</u>, 561 U. S., at 69, n. 1.

The arbitration agreement included in the M/V General Piar Charter Party does not confer the Arbitral Tribunal with the power to resolve issues of arbitrability. The same occurs with the Rules of Arbitration of the Society of Maritime Arbitrators. <u>Bordelon Marine, L.L.C. v. Bibby Subsea ROV, LLC</u>, 2016 WL 3655997, * 9-10, Civil Action NO. 16-1106 (E.D. La. July 7, 2016). Therefore, there is no "clear and unmistakable" evidence that the parties delegated arbitrability questions to the Panel. During most of the arbitration proceeding, CME also asserted that the Panel lacked authority to rule on its own jurisdiction. FMO agreed with CME. The Panel Tribunal acknowledged CME's position in its Partial Award on Security dated January 7, 2017, a true copy of which is herewith attached as Exhibit C. <u>See</u>, Exhibit C, at ¶ 67. Significantly, the Final Award is silent as to the Arbitral Panel's authority to decide its own jurisdiction. However, even if the arbitral tribunal has ruled on the issue, its determination receives no deference; "the court should decide [the] question . . . independently." <u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 943 (1995); <u>see also</u>, <u>KenAmerican Res. v. Int'l Union, UMW</u>, 99 F.3d 1161, 1163 (D.C. Cir. 1996) (court may

"not afford any deference at all to the arbitrator's view").

Accordingly, this Court should review the Panel's ruling on its own jurisdiction de novo. See, Katz v. Feinberg, 290 F.3d 95, 97 (2d Cir. 2002). That the Court should review FMO's jurisdiction defenses de novo particularly applies to FMO's jurisdictional defenses that (i) the valid M/V General Piar charter is not the one contained the arbitration clause serving as foundation for the Final Award; (ii) the M/V General Pair charter's arbitration agreement was void pursuant to Venezuelan law; (iii) CME has waived its right to arbitrate; and (iv) the M/V General Piar charter's arbitration agreement has been superseded by a subsequent forum selection provision contained in parties' alliance agreement. See Final Award, ¶ 120.

Second, Article V(1)(c) of the New York Convention permits a court to refuse to confirm an arbitral award when:

> The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of submission to arbitration . . . .

In this case, the Final Award addresses matters over which FMO has not consented to arbitration. In that regard, FMO

12

repeatedly asserted during the course of the arbitration that it had not consented to arbitrate issues concerning the so-called "Residual Contracts" and determinations concerning those agreements were outside the parties' arbitration agreement. See, FMO's Answering Brief on Jurisdiction and Case Management, a true copy of which is herewith attached as Exhibit D.

Here, the Panel improperly exercised jurisdiction by awarding damages arising out the "Residual Contracts." Since this presents an issue of arbitrability, it is presumptively reviewed by this Court de novo. See, Sonera Holding B.V. v. Cukurova Holding A.S., 895 F. Supp. 2d 513, 521 (S.D.N.Y. 2012), rev'd on other grounds, 750 F.3d 221 (2d Cir. 2014) (whether award should be denied enforcement under Article V(1)(c) of New York Convention because the tribunal exceeded authority in awarding damages beyond those permitted by submission to arbitration is a "claim regarding the scope of arbitrability"); Kristian v. Comcast Corp., 446 F.3d 25, 48 (1st Cir. 2006) ("damages limitation" in agreements "poses a question of arbitrability"). The presumption of de novo review can only be overcome if "the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 83 (quoting AT&T Techs., Inc. v. Comms. Workers, 475 U.S. 643, 649 (1986));

see also, Rent-A-Center, 561 U.S., at 69 n.1 (2010) (the "'clear and unmistakable requirement' . . . pertains to the parties' manifestation of intent" (emphasis in original)); First Options, 514 U.S. at 944-45. Because this requires clear and unmistakable evidence of intent, courts do not balance competing sources of evidence. See, e.g., First Options, 514 U.S. at 944. Rather, any ambiguity as to intent "requires" courts "to assign questions of arbitrability to the district court." Katz, 290 F.3d 95, 97 (2d Cir. 2002).

Finally, the Award should not be confirmed because doing so would be contrary to the public policy interests of the United States. See, New York Convention, Article V(2)(b). Enforcing a contract [for otherwise legitimate goods or services] that has been procured by bribery in favor of the party that secured such contract thought corruption is against U.S. public policy. A court must not give the U.S. judiciary's stamp of approval, to an award of lost profits based on a contract obtained through the bribery of foreign public officials and other illegal acts, in violation of well-defined U.S. public policy. England v. Sys. Mgmt. Am. Corp., 38 F. Appx' 567, 572 (Fed. Cir. 2002). During the course of the arbitration, FMO submitted numerous evidence to prove that CME has secured all of its

agreements with FMO, including the M/V General Piar Charter Party, through corruption of foreign officers and clear violations other Venezuelan laws. As reflected in the Final Award, the Panel rejected FMO's corruption defense. In doing so, the Arbitral Panel failed to consider most of the evidence submitted by FMO, which established numerous red flags of corruption acts by CME and applied the wrong standard of proof in this regard. Likewise, the Panel impeded FMO's from securing evidence from CME in connection with the allegations of corruption. Confirming the Award would thus violate public policy and FMO should be provided an opportunity to have Panel's determination on corruption reviewed by the Court.

Furthermore, courts, not arbitrators decide whether enforcement of an award would contravene public policy. See, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,, Inc., 473 U.S. 614, 638 (1985) ("[T]he national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate [public policy] interest . . . has been addressed.") Therefore, the Court must independently review the arbitral record on the issue of corruption.

**POINT III.       IN ANY EVENT, THE COURT SHOULD STAY ENFORCEMENT OF THE JUDGMENT IN LIGHT OF THE VENEZUELA SANCTIONS.**

The Venezuelan sanctions program prohibits judgment creditors from enforcing their judgments against the Republic unless and until they obtain a license from OFAC. The Venezuelan sanctions program was promulgated pursuant to the International Emergency Economic Powers Act ("IEEPA"), which authorizes the President, upon the declaration of a national emergency, to "nullify, void, prevent or prohibit, any acquisition … use, transfer … or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. § 1702(a)(1)(B). In 2015, President Barack Obama exercised his authority under IEEPA to declare a national emergency with respect to the ongoing crisis in Venezuela. Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015) ("E.O. 13692").

Thereafter, President Donald J. Trump exercised his authority under IEEPA to take additional steps to address the national emergency declared in E.O. 13692 by issuing several additional Executive Orders. In particular, on August 5, 2019, the President issued Executive Order 13884 ("E.O. 13884"), which states that all property and

interests in property of the Republic that are in the United States or that come into the possession or control of a U.S. person "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019), § 1(a). E.O. 13884 further directs the Treasury Secretary to issue regulations and take other actions necessary to implement that order. See E.O. 13884, § 8; see also 50 U.S.C. § 1704.

On November 22, 2019, OFAC issued amended Venezuelan sanctions regulations, which implement all of the executive orders issued in connection with the national emergency declared in E.O. 13692, including E.O. 13884. 31 C.F.R. § 591.201. The amendments included a new regulation, which states: Notwithstanding the existence of any general license issued under this part, or issued under any Executive order issued pursuant to the national emergency declared in E.O. 13692, the entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part. 31

C.F.R. § 591.407 (emphasis added). The Venezuelan sanctions regulations further state that "any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201." 31 C.F.R. § 591.202(e) (emphasis added).

The Supreme Court upheld nearly identical regulations under the Iran sanctions program, stating that the President had the authority under IEEPA to prohibit attachments of blocked property and to retroactively nullify any such attachments. See, Dames & Moore v. Regan, 453 U.S. 654, 673-75 (1981). Furthermore, pursuant to the Foreign Sovereign Immunities Act, a judgment creditor cannot commence enforcement of a judgment against a foreign state, such as Venezuela, unless and until such time as the court deems it reasonable to do so. See 28 U.S.C. § 1610(c). In light of the Venezuelan sanctions, it is inherently unreasonable to allow CME to commence enforcement of a judgment in the present circumstances. The most prudent course of action is to stay enforcement of the judgment until CME obtains the requisite license from OFAC. Such a stay is necessary to ensure compliance with the Venezuelan sanctions and will not work any prejudice against CME because it cannot seek to attach or execute

upon any property of FMO c – property that has been blocked pursuant to the Venezuelan sanctions program – in the present circumstances. See E.O. 13884, § 1(a). Accordingly, to the extent the Court might be inclined to enter a judgment on the Award, the Court should stay enforcement of that judgment until such time as CME  obtains a license from OFAC or the relevant sanctions are lifted. See 28 U.S.C. § 1610(c).

**CONCLUSION.**

WHEREFORE, FMO urges the Court to treat CME's motion as opposed, allow FMO 30 days to interpose an answer and opposing papers, accordingly, and to grant to FMO such other and further relief as this Honorable Court may deem just and proper.

Dated:      New York, New York
            September 8, 2020

                             Respectfully submitted,

                             MAHONEY & KEANE, LLP
                             Attorneys for Petitioner

                By:   s/ Garth S. Wolfson
                             Garth S. Wolfson /
                             Edward A. Keane
                             61 Broadway, Suite 905
                             New York, New York 10006
                             (212) 385-1422

                                 *-and-*

                             Daniel E. Vielleville
                             ASSOULINE & BERLOWE
                             100 SE 2nd St., #3105
                             Miami, Florida 33131
                             (905) 567-5576