| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | USDC SDNY |
| **SOUTHERN DISTRICT OF NEW YORK** | DOCUMENT |
| | ELECTRONICALLY FILED |

```
-----------------------------------------------------------------x    DOC#: _____
COMMODITIES & MINERALS ENTERPRISE,       :    DATE FILED: ___12/10/2020___
LTD.,                                    :
                         Petitioner,     :
                                         :
                                         :    1:19-cv-11654-ALC
             v.                          :    AMENDED
                                         :    OPINION & ORDER
CVG FERROMINERA ORINOCO, C.A.,           :
                                         :
                         Respondent.     :
                                         :
-----------------------------------------------------------------: x
```

ANDREW L. CARTER, JR., District Judge:

Petitioner Commodities & Minerals Enterprise Ltd. ("Petitioner" or "CME") seeks an order to confirm arbitration award pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 et seq., and Article III of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 330 U.N.T.S. 38 (the "New York Convention"). Specifically, it asks the Court to issue an order to (1) confirm an international arbitration award in favor of Petitioner made by a panel of three arbitrators (the "Panel") in an arbitration administered by the Society of Maritime Arbitrators ("SMA"), sitting in New York, New York, pursuant to the rules of the SMA (the "SMA Rules"), (2) direct the Clerk to enter final judgment thereon against Respondent CVG Ferrominera Orinoco, C.A. ("Respondent" or "FMO"), including interest on $12,655,594.36 at 5.50% per annum from December 20, 2018 until the date of judgment, and at the statutory rate thereafter; and (3) grant Petitioner its costs and expenses, including reasonable attorneys' fees, in this proceeding. For the reasons that follow the Court GRANTS Petitioner's motion.

## BACKGROUND

1

The underlying dispute in this matter stems from a series of contracts between CME and FMO. CME is a company incorporated under the laws of the British Virgin Islands that sells commodities and minerals, including iron ore. FMO is a state-owned company organized and existing under the laws of the Bolivarian Republic of Venezuela that produces and exports iron ore. Relevant here, in January 2010, the parties entered into a charter party contract ("General Piar Charter") by which CME time-chartered the M/V General Piar to FMO to act as a shuttle vessel to transport iron ore. ECF No. 7-1 ¶ 172. The General Piar Charter contains a broad arbitration clause, which states, in part:

> This charter shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States Code and any dispute arising out of or in connection with this contract shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgement may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

ECF No. 7-5 § 13.

CME commenced an arbitration[1] pursuant to the above arbitration clause seeking to recover for unpaid invoices, lost profits, and attorney's fees. FMO opposed CME's claims, and asserted rights of set off and counterclaims. A key defense for FMO was that the General Piar Charter was void because it was allegedly procured by corruption and because it was not approved by the "the relevant Minister", "the President of CVG, the supervisory organ of FMO", or the

---

[1] By special agreement, the parties agreed to engage in a consolidated hearing that addressed a second related dispute arising under the Transfer Management System Contract. ECF No. 7-1 at 2. The Panel issued a separate award in that matter which incorporates the same statement of reasons for award that is at issue here. ECF No. 7-1 at 2. Because the details of the Transfer Management System Contract are not here relevant, they will not be discussed in this Opinion and Order.

"Attorney General", as required by Venezuela law governing contracts by state-owned entities. Opp. at 11-12.

The Panel found for CME, and issued an award for $12,655,594.36, plus post-award interest at a rate of 5.50% per annum from December 20, 2018 until the award is fully paid or confirmed and made a judgment of the Court. It did so through a Final Award, issued on December 20, 2018, which explained the Panel's reasoning in over 150 pages, and a February 11, 2019 Corrected Award, which corrected clerical errors in the Final Award (together, "the Award"). On the issue of corruption, the Panel concluded that the evidence proffered showed neither that CME had engaged in corruption nor that it had done so with respect to the General Piar Agreement. *See* ECF No. 7-1 ¶ 334 (explaining that a witness called by FMO "came across as a very forthright and impressive witness" but "her testimony was broad and procedural in nature" and "did not provide any specific direct or circumstantial evidence of corrupt or criminal behavior on the part of [the President of CME] or CME."); ¶ 337 ("FMO has relied heavily on the guilty plea entered by [the President of FMO] to criminal charges against him as evidence the TSMC and General Piar Charter were procured by corrupt acts. Although we have received only a partial record of the proceedings against [the President of FMO], we have seen no statement or confession from him which indicates these contracts were procured by any corrupt acts on the part of CME or [the President of CME].")

On December 19, 2019, CME filed a petition to confirm, recognize or enforce arbitration, ECF No. 1, and a motion to confirm arbitration, ECF No. 5. The Court set a briefing schedule directing FMO to file its opposition to the Petition by no later than May 19, 2020 and directing CME to file its reply to such opposition by June 2, 2020. ECF No. 10.

Section 35 of the agreed-upon SMA rules state that "[w]herever parties have agreed to arbitration under these Rules, they shall be deemed to have consented to service of any papers,

notices or process necessary to initiate or continue an arbitration under these Rules or a court action to confirm judgment on the Award issued. Such documents may be served (a) by mail addressed to such party or counsel at their last known address; or by personal service." ECF No. 9-2 at § 35. In compliance with this SMA provision[2], CME served the instant petition and supporting documents on arbitration counsel to FMO, Mahoney & Keane, LLP, and on FMO at its last known address, in Venezuela by mail. ECF Nos. 9, 12. By letter dated April 7, 2020, Mahoney & Keane indicated that they do not represent FMO in "the new matter", referring to this confirmation proceeding. ECF 11. FMO did not respond on its own behalf or through counsel.

On June 2, 2020, Petitioner filed a reply brief indicating that the Award should be confirmed in light of Respondent's lack of opposition. ECF No. 13. On August 14, 2020, this Court issued an order for Respondent to show cause why this Petition should not be treated as unopposed. ECF No. 14. On August 29, 2020, Mahoney & Keane filed a letter with the Court that requested an extension of time to respond to the order to show cause so it might determine if the firm would be retained to represent Respondent in this matter. ECF No. 17. The Court granted a brief extension for Respondent to answer the order to show cause. ECF No. 19. On September 8, 2020, FMO, having retained Mahoney & Keane, responded to the order to show cause requesting leave of the Court to file a brief opposing the motion to confirm arbitration award. ECF No. 21. The Court granted this request. ECF No. 26.

On September 30, 2020, Respondent filed an opposition to the motion to confirm arbitration award. ECF Nos. 30-33. Therein, Respondent argues that the Award should not be confirmed because: the Panel lacked jurisdiction to arbitrate the dispute; the Award violated

---

[2] FMO asserted in a footnote in their brief that service was deficient. Opp. at 5 n.1. The Court concludes service was proper under the SMA rules, to which the parties consented.

Article V.1(c) of the New York Convention by allocating FMO's payments to CME to contracts other than the General Piar Charter; and the Award violated Article V.2(b) because it was procured by corruption, so its enforcement would be counter to United States public policy. On October 14, 2020, Petitioner filed a reply. ECF No. 38. Petitioner argues that Respondent's challenges to the award are time-barred and meritless, and enforcement of the award would not be contrary to public policy.

## STANDARD OF REVIEW

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted). The Second Circuit has recognized that "an extremely deferential standard of review" is appropriate in the context of arbitral awards in order "[t]o encourage and support the use of arbitration by consenting parties." *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110 (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991) (internal quotation marks omitted). Accordingly, "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrator[ ] is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

On a motion to confirm arbitration award, Article V of the New York Convention is the key provision. It provides that:

> (1) Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
> (a) The parties to the agreement referred to in Article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
> 2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Article V, New York Convention. "A district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Id*. "The burden is a heavy one, as 'the showing required to avoid summary confirmation is high.'" *Id*. (citing *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).

DISCUSSION

Before examining the merits of this petition, the Court considers whether it has jurisdiction to do so—and concludes that it does. Although the Federal Arbitration Act does not independently confer jurisdiction on the federal courts, the Federal Arbitration Act provides federal jurisdiction over those arbitral awards that are governed by the New York Convention. *See* 9 U.S.C. § 203. The New York Convention applies here because the parties are foreign corporations arbitrating in the United States. *Scandinavian Reins. Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). "Once a federal court has subject matter jurisdiction[, it] may confirm an arbitration award. . . ." *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 706 (2d Cir. 1985).

This Court also has personal jurisdiction in light of the parties' agreement that any arbitration occur in New York. Such a designation functions as the parties' consent to jurisdiction, because "[t]o hold otherwise would be to render the arbitration clause a nullity." *Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964). Further, the parties agreed that "[f]or the purposes of enforcing any award, judgement may be entered on an award by any court of competent jurisdiction." ECF No. 7-5, ¶ 13. As explained above, this is a court of competent jurisdiction. There is no doubt that the parties have consented to this forum.

Now to the merits of Petitioner's application. Review of arbitral awards under the New York Convention is "very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Yusuf Ahmed Alghanim,* 126 F.3d at 23 (quoting *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993)). For the reasons that follow, the Court concludes that FMO's objections are no obstacle to the confirmation of the Award.

7

Lack of Jurisdiction

FMO argues that the Award should not be confirmed because the Panel lacked jurisdiction to decide this dispute.[3] Specifically, FMO argues that (1) the Panel's finding of arbitrability is subject to *de novo* review by the Court (2) the Panel failed to consider Venezuelan law properly; and (3) the Court should, on *de novo* review, find no valid agreement existed between the parties under Venezuela law.

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Where an arbitrator is authorized to consider arbitrability, a reviewing court "will set that decision aside only in very unusual circumstances". *Id.* at 942. But, "[i]f, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently". *Id.* at 943. "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so". *Id.* (*citing AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)). The Second Circuit has repeatedly held that "a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of

---

[3] FMO says that this argument falls under Article V.1 without specifying a subsection. Opp. at 6. According to FMO, on *de novo* review, the Court should do a New York choice-of-law analysis and apply the law of Venezuela to find the arbitration clause or General Piar Charter void *ab initio*. With that in mind, the relevant subsection of Article V appears to be Article V.1.(a)., which permits a court to deny confirmation when the agreement to arbitrate "is not valid . . . under the law of the country where the award was made". The Court disagrees with Petitioner that arbitrability arguments of this sort are waived because they were not included in a timely motion to vacate under the Federal Arbitration Act. Reply (ECF No. 38) at 2-3. In this case, there is room for such an argument within the New York Convention itself.

8

arbitrability.'" *Benihana, Inc. v. Benihana of Tokyo*, LLC, 784 F.3d 887, 898 (2d Cir. 2015) (citing *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)).

The arbitration clause at issue here encompasses "any dispute arising out of or in connection with" the General Piar Charter. ECF No. 7-5 ¶ 13. This is certainly as broad, if not broader, than language the Second Circuit has held is clear evidence that an arbitrator has the authority to decide arbitrability. Though FMO argues that the Panel was not empowered to decide arbitrability, it offers no argument as to why the broad arbitration clause in the General Piar Charter does not delegate such questions to the Panel. In light of the exceedingly broad language of the clause, and no argument to the contrary by FMO, the Court concludes that the Panel properly decided the issue of arbitrability. The Panel's determination is therefore due highly deferential review.

The Panel rejected FMO's argument that the General Piar Charter is subject to Venezuela law, relying instead on the choice of law provision therein that calls for the application of U.S. maritime law. ECF No. 7-1 ¶¶ 319-20. Though it held U.S. law applied, the Panel noted that it credited CME's expert reports and testimony that under the Venezuelan doctrine of "good faith", the alleged failure to get required approvals for the contract would not void an international commercial contract with a foreign company governed by U.S. law. ECF No. 7-1 ¶ 321. The Panel further concluded that FMO failed to carry its burden of proof that the General Piar Charter, which was approved by FMO's board, did not in fact have the approvals required under the laws of Venezuela. ECF No. 7-1 ¶ 321. Under the deferential standard owed to the Panel's determination, the Court sees no basis to set aside the Panel's conclusion.

Because the Court concludes the Panel did not lack jurisdiction to decide arbitrability, this argument fails.

Article V.1(c) Beyond Submission to Arbitration

Next, FMO argues that the Panel's Award exceeded the scope of the agreement to arbitrate. Specifically, FMO contends that the Award improperly decided and intermingled issues arising under the General Piar Charter and other agreements between FMO and CME. The key area where intermingling occurred, according to FMO, is in the Panel's decision to allocate FMO's past payments to CME to contracts other than the General Piar Charter. FMO contends this violated its right to decide in the first instance where its payments were allocated and led to improper shifting of moneys owed between contracts.

Article V.1(c) thwarts confirmation of awards that "deal[] with a difference not contemplated by or not falling within the terms of the submission to arbitration" or "contain[] decisions on matters beyond the scope of the submission to arbitration". The Court concludes this provision is not triggered here. Although FMO dubs this an issue of arbitrability that requires *de novo* review, the Court disagrees. The question of whether prior payments between the companies apply to the General Piar Charter to determine how much money each party owes the other falls squarely within the broad arbitration clause in the General Piar Charter. The Court's review is therefore deferential.

Under that standard, the Court sees no reason to disturb the Panel's allocation of payments. FMO indicates that the Panel considered its proposed allocation against an alternative proposed by CME. Whether the Panel allocated prior payments among contracts as FMO would have liked does not appear to constitute a "serious error", much less one that counsels against confirmation. *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the panel committed an error—or even a serious error. It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s]

10

his own brand of industrial justice' that his decision may be unenforceable."). Further, it is disingenuous for FMO to complain about intermingling of contracts when FMO agreed for the Panel to preside over a consolidated proceeding in which it examined multiple contracts between the parties. *Supra* Note 1.

For these reasons, the Court concludes FMO's argument under Article V.1(c) fails.

Article V.2(b) Alleged Corruption Violates Public Policy

Finally, FMO contends that Article V.(2)(b), which permits a court to decline to confirm an award when "[t]he recognition or enforcement of the award would be contrary to the public policy of that country", applies. Specifically, FMO contends that the underlying contract was part of a corruption scheme involving both CME and FMO. FMO complains that it submitted evidence to the Panel "indicating that CME—at least probably—engaged in a corruption scheme to secure . . . the General Piar Charter", which the Panel ignored. Opp. at 23.

Here, FMO does not explain why the enforcement of the award, as distinct from the enforcement of the underlying contract, would be contrary to public policy. This is fatal to FMO's argument. The Second Circuit has tightly restricted the public policy exception, emphasizing that it applies only where enforcement of the arbitration award, as opposed to enforcement of the underlying contract, would violate public policy. *See IBEW, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) ("[A] court's task in reviewing an arbitral award for possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, 'creates [an] explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy."); *Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 46 (2d Cir. 1997) ("[C]ourts may refuse to

11

enforce arbitral awards only in those rare cases when enforcement of the award would be directly at odds with a well-defined and dominant public policy resting on clear law and legal precedent.").

To the extent a party claims that the underlying contract violates public policy, that claim is " a matter to be determined exclusively by the arbitrators". *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998). Contrary to the characterization by FMO that the Panel was derelict in considering the corruption issue, the Award tells another story. The Panel granted FMO broad document discovery on corruption from CME, which FMO opted not to pursue. ECF No. 7-1 at ¶314. The several pages of the Award devoted to corruption consider the limited evidence presented to the Panel, which it deemed insufficient, and query whether the discovery foregone by FMO might have proved up the corruption allegations. ECF No. 7-1 at 57-63. FMO seems to concede it did not carry its burden to show the General Piar Charter was impacted by corruption with its description that it showed CME "at least probably" engaged in corruption. Opp. at 23. The Court therefore finds no public policy concern implicated by the enforcement of the Award and takes no issue with the Panel's finding that the General Piar Charter contract does not implicate public policy concerns.

Having concluded that all the bases FMO advanced to oppose confirmation are without merit, the Court sees no need to discuss the parties' remaining arguments. The Court will confirm the Award.

Attorneys' Fees

The Court turns to CME's request for attorneys' fees. Because "a court may, in the exercise of its inherent equitable powers, award attorneys' fees when opposing counsel acts in bad faith, attorneys' fees and costs may be proper when a party opposing confirmation of an arbitration

award refuses to abide by an arbitrator's decision without justification." *See Abondolo v. H. & M. S. Meat Corp.*, 2008 U.S. Dist. LEXIS 38726, at *9 (S.D.N.Y. May 8, 2008) (collecting cases). In light of FMO's failure to comply with the award or come forward with a good faith reason for not complying in this action, the Court GRANTS Petitioner's request for costs.

## CONCLUSION

For the reasons above, the Court GRANTS CME's petition to confirm the Award. The Court respectfully directs the Clerk of Court to enter judgment against Respondent CVG Ferrominera Orinoco, C.A., including interest on $12,655,594.36 at 5.50% per annum from December 20, 2018 until the date of judgment, and at the statutory rate thereafter. The Court GRANTS the requests for attorneys' fees arising from the proceeding. CME must file its motion for attorneys' fees by December 21, 2020. FMO may oppose that motion by January 6, 2021. CME may make any reply by January 13, 2021.

SO ORDERED.

December 10, 2020
Dated: New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge